IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                               No. CR S-07-0023 MCE

    vs.

TROY L. CARDOSO,

    Defendant.                            <u>ORDER</u>

_____/

        Defendant's motion for release from custody came on for further hearing on January 8, 2009. The hearing followed the court's receipt of the evaluation of defendant by Humberto Temporini, M.D., ordered on October 28, 2008. Assistant U.S. Attorney Heiko Coppola appeared for the government; Dwight Samuel, Esq. appeared for defendant, who was present in custody. This order confirms defendant's ongoing detention and thus denies his motion, for the reasons set forth below.

I. <u>Background</u>

        Defendant first appeared in court on February 1, 2007, following his arrest on a charge of possession of one or more matters containing depictions of minors engaged in sexually explicit conduct, under 18 U.S.C. § 2252(a)(4)(B). On that date, the government moved for detention and the defense submitted the matter, after which the court ordered defendant detained

on grounds of dangerousness. After a hearing on defendant's motion for bail review held on February 1, 2008, the court ordered defendant's continuing detention. A hearing on defendant's second motion for bail review or release was held on October 8, 2008, during which the defense presented an evaluation of defendant by a specialist in clinical and forensic psychology and psychotherapy. See Letter from Christopher N. Heard, J.D., Ph.D. to Dwight Samuel dated Sept. 7, 2008 (sealed at docket no. 56). Dr. Heard concluded that defendant "does not present a significant risk of harm to the community if released on bail," and recommended that if released defendant be seen by a mental health professional on a weekly basis for monitoring of his emotional state. Id.

Following the October 8 hearing, the court directed the parties to identify a mutually acceptable psychiatrist or other mental health professional to provide the court with an independent evaluation of defendant's mental status. Based on the parties' agreement, the court appointed Humberto Temporini, M.D., to evaluate defendant and provide his conclusions to the court. Dr. Temporini's report reviews defendant's social, educational, employment, sexual and relationship, psychiatric and legal history, discusses the doctor's impressions formed during the course of three interviews of defendant, and reports on the results of a series of psychological tests and actuarial risk assessments administered to defendant.[1] Letter from Humberto Temporini, M.D. to The Honorable Kimberly Mueller dated December 29, 2008 ("Temporini Letter") (sealed at docket no. 72).[2] Dr. Temporini concluded that defendant meets the diagnostic criteria for a personality disorder not otherwise specified. He opined that defendant "presents a moderately elevated risk for future violence should he be released to the community," with

---

[1] Among other results, defendant recorded an extremely high score on the Social Desirability subscale of the Abel Assessment questionnaire known as the AASI-2, suggesting inability or unwillingness to respond truthfully to others.

[2] While Dr. Temporini's complete report has been sealed, the court quotes from the report selectively below, as consistent with the discussion with counsel during hearing, and without disclosing the highly sensitive details of the report.

several factors each contributing to and mitigating the increased risk. Id. at 20. While agreeing with Dr. Heard's conclusion that defendant's prior acts of violence[3] were "contextual," Dr. Temporini's view is that these prior incidents "increase his future risk of acting out," in light of defendant's lack of "clear insight into the seriousness of his past behavior" and his "history of serious, repeated acting out in the context of romantic breakups," among other factors. Id. at 21. Dr. Temporini identifies defendant's prior history of incidents as "rooted in the defendant's belief that he was being treated unfairly," and goes on to observe that "[u]nfortunately, his personality structure is such that he frequently perceives non threatening, commonplace events as the result of others' willful, malicious behavior toward him. Since personality traits tend to be stable over time, it is likely that these misperceptions will continue, and with them the possibility of acting out. . ." Id. Dr. Temporini indicates that defendant's elevated risk of violent acting out "could be potentially mitigated if he were to develop more insight into his behavior," and therefore recommends that any release be conditioned on mandatory mental health treatment. Id. Dr. Temporini also considers the risk defendant would pose if released in light of the section 2252(a)(4) charge he currently is facing, and concludes based on the AASI-2 test results that "defendant's risk of criminal sexual contact with a child is not higher than that of the general population (i.e., men not charged with a child pornography offense, and who have no prior history of sexual misconduct)."

---

[3] Defendant has a prior kidnapping conviction for which he was sentenced in 1995 to five years incarceration and seven years probation; his probation was revoked twice, the second time resulting in an additional five year sentence, from which defendant was paroled after serving nearly two years; defendant was still on parole at the time of the current offense. In 2003, while on probation for the kidnapping conviction, defendant was charged with robbery based on a 2002 incident in which he forcibly seized his medical files from a therapist at Kaiser; although these charges were dropped defendant has not denied the underlying actions. Defendant also has a 1993 misdemeanor conviction for reckless driving. The kidnapping offense appears to have occurred while he was on misdemeanor probation.

1   At the hearing on January 8, the court engaged in a discussion with counsel
2 regarding Dr. Temporini's conclusions, and counsel presented their closing arguments before the
3 matter was submitted for decision.

III. Summary of Arguments

In arguing for release, defense counsel put forth a two-pronged argument. The first prong rests on the proposition that in determining whether or not there are grounds for detention based on defendant's dangerousness, the court may consider only the charged offense and the nature of that offense, and not defendant's prior incidents of violence. For this proposition, counsel relies on the cases of United States v. Byrd, 969 F.2d 106 (5th Cir. 1992), United States v. Ploof, 851 F.2d 7 (1st Cir. 1988), and United States v. Patriarca, 948 F.2d 789 (1st Cir. 1991). The second prong consists of the proposition that preventive detention may not be based on speculation alone, with reliance on United States v. Say, 233 F. Supp. 2d 221 (D. Mass. 2002).

In maintaining that defendant should remain detained, the government's counsel argued, in essence, that the defendant's lack of insight into the seriousness of any of his past violent behaviors, as well as of the actions underlying the current offense, supports a determination of dangerousness. The government also noted that Dr. Temporini in his report stopped short of recommending release, but rather proposed conditions in the event the court determined to grant release.

IV. Analysis

This is not a case in which there is a presumption of dangerousness raised by the charged offense. See 18 U.S.C. § 3142(e) (excluding 18 U.S.C. § 2252(a)(4) from list of statutes invoking a presumption).[4] However, Congress has defined "crime of violence" to include any

---

[4] The court's reference to a presumption in discussion with counsel thus was a verbal misstep.

4

felony under chapter 110. 18 U.S.C. § 3156. Chapter 110 includes section 2252. Thus, the proceedings held to consider dangerousness alone are appropriate in this case. 18 U.S.C. § 3142(f)(1)(A). Because there is no presumption of dangerousness, the burden of production and persuasion is on the government. United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). The evidence of dangerousness must be clear and convincing to support detention. 18 U.S.C. § 3142(f).

Here, the government has met and continues to meet its burden in relying on the charged offense and by pointing to the conclusions of Dr. Temporini. Application of the factors to be considered in determining whether detention is appropriate weigh in favor of detention, with the support of evidence that is clear and convincing. As noted, the nature of the charged offense is such that, by virtue of statutory definition, it is a crime of violence. 18 U.S.C. § 3142(g)(1); 18 U.S.C. § 3156. Defendant's case in this way is distinguishable from those cited by defense counsel at hearing. Defendant's mental condition, as determined by Dr. Temporini, is infused with a lack of insight into the seriousness of his past violent behaviors, contributing to Dr. Temporini's professional judgment that defendant has an elevated risk of violent acting out. 18 U.S.C. § 3142(g)(3)(A). Although defense counsel noted that defendant has attended counseling sessions during the time he has been incarcerated at Sacramento County Jail, the record indicates he has not fully participated in those sessions. Moreover, his participation occurred before Dr. Temporini's evaluations identifying the lack of insight that forms the basis of this court's greatest concern. In the context of Dr. Temporini's conclusions, the fact that there is no glimmer of an indication that defendant has begun a process of developing insight after nearly two years of incarceration, with access to counseling, gives the court great pause.

Reviewing the remaining factors relevant to a detention analysis, at the time of the current offense defense remained on parole for his prior kidnapping conviction. 18 U.S.C. § 3142(g)(3)(B). In assessing the nature and seriousness of the danger to any person or the community that would be posed by defendant's release, 18 U.S.C. § 3142(g)(4), the court places

significant weight on Dr. Temporini's observations that defendant's prior incidents "increase his future risk of acting out," in light of defendant's lack of "clear insight into the seriousness of his past behavior." Even if, as the doctor observes, mandatory mental health counseling could potentially mitigate the risks posed by defendant's lack of insight, there is no indication at this time that defendant has the ability to develop that insight, meaning that the potential danger he poses is instant and not merely speculative.

The court has carefully considered whether conditions can be fashioned to overcome its legal determination of danger, and notes that defendants' parents are prepared to post a significant collateral bond and serve as third party custodians subject to a range of restrictions. While the court has no reason based on the present record to question the parents' sincerity in desiring to assist their son or their suitability as custodians, it notes that defendant described, from his perspective, a potentially dysfunctional and contentious relationship with his father. Temporini Letter at 3. It is defendant's perception of that relationship, considered in light of Dr. Temporini's observation of defendant's "frequently perceiving non threatening, commonplace events as the result of others' willful, malicious behavior toward him," that suggests the third party custodianship arrangement proposed is not viable, even if the court were otherwise willing to grant release.

In light of the record as a whole, the court concludes that conditions cannot be fashioned to overcome the risk of danger defendant poses at this time.

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendant's motion for release filed October 2, 2008 is denied; and

2. The detention order filed February 1, 2007 is confirmed.

DATED: January 9, 2009.

_____
U.S. MAGISTRATE JUDGE

0 cardoso.detention